IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Case No. 4:15-bk-04297-JJT |
| | : | |
| THE BUCKTAIL MEDICAL CENTER, | : | Chapter 11 |
| | : | |
| Debtor | : | |

*************************************************************************

| | | |
|---|---|---|
| THE BUCKTAIL MEDICAL CENTER, | : | Doc. No. ___ |
| | : | |
| Movant | : | |
| | : | Hearing Date & Time: |
| v. | : | |
| | : | |
| NO RESPONDENTS | : | |

*************************************************************************

**DEBTOR'S MOTION FOR ORDER AUTHORIZING PAYMENT OF PRE-PETITION WAGES, BENEFITS, EMPLOYMENT TAXES, AND RELATED PAYROLL OBLIGATIONS AND REQUEST <u>FOR AN EXPEDITED HEARING THEREON</u>**

COMES NOW the Debtor, The Bucktail Medical Center, by and through its proposed undersigned counsel, and does file the within Motion, upon a cause whereof the following is a statement, to wit:

1. The Debtor, The Bucktail Medical Center ("Debtor"), is a Pennsylvania not for profit business corporation which commenced the above-captioned case by filing a voluntary petition for relief pursuant to the provisions of Chapter 11 of Title 11 of the U.S. Code, 11 U.S.C. § 101, <u>et seq.</u>, on October 2, 2015.

2. This proceeding is a "core" proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

3. As of the date of this filing, no creditors' committee or trustee has been appointed.

4. Upon the filing of the above-captioned case, the Debtor became a Debtor-In-Possession with all of the duties, obligations and authority of such entities under 11 U.S.C. § 1107.

**<u>BACKGROUND</u>**

5.   As of the commencement of the case, the Debtor operates as a Federally regulated health care provider operating a twenty-one (21) bed critical access hospital, including emergency department, a forty-three (43) bed skilled nursing facility, a basic life support ambulance and a community health clinic dedicated to providing primary and preventative health care to the community.

6.   Debtor employs approximately ninety-nine (99) full, part-time and casual employees in connection with its operation of the business(es).

7.   Due to the changing nature of the health care industry, including but not limited to changes in government funding as well as changes in health insurance coverage and payment for services under the same, the Debtor suffered a period of time where its cash flow was affected precipitating the filing of the instant petition for relief.

8.   The Debtor's management believes that the business is a viable entity on an ongoing basis, the Debtor intends on continuing to operate its business (or a more streamlined version of it) and use operating revenue to fund a Plan of Reorganization.

9.   The Debtor is an invaluable community asset and intends on remaining a fixture for the healthcare needs of the community.

10.   As of the date of the petition, the business is operational and generating income, and it is the intent of the Debtor to keep the business operational and income-producing during this bankruptcy proceeding.

## **SUBSTANTIVE RELIEF REQUESTED**

11.   As of the commencement of this case, the Debtor had approximately ninety-nine (99) full, part-time and casual employees.

12.   Generally, employees do not consider themselves to be "creditors" of their employer.  The Debtor fears that if employees are deprived of their regular paychecks due to the bankruptcy filing, employee spirits and morale will suffer, and that the employees will cease working for the Debtor, thereby causing immediate and irreparable harm to the Debtor.

13.   The employees are paid on an hourly basis and their hours in each pay period tend to fluctuate and are time clock calculated.  Accordingly, the precise amount of wages owed to the employees is not calculable until the end of the pay period.

14.   The employees are paid on a bi-weekly basis.  At the end of the pay period, the Debtor generates the payroll information and prepares the payroll in house. Generally, paychecks are issued on the Friday following the end of the pay period.  To illustrate by example, the paychecks due the employees on October 2, 2015, would cover the period from September 13, 2015, at 7:00 AM, through September 27, 2015, at 6:59 AM.

15. Additionally, Debtor is responsible for payment of payroll taxes on employees' wages, which occurs simultaneously with the issuance of the employees' paychecks.

16. Finally, the Debtor is responsible for payment of certain employee benefits, which occurs simultaneously with the issuance of the employees' paychecks.

17. As such, the employment taxes owed on said wages, and the employee benefits, would also constitute pre-petition obligations.

18. Attached hereto is the partial payroll run utilized for the partial payroll period of September 27, 2015, at 7:00 AM through and including October 2, 2015 (the pre-petition amount). This payroll run is indicative of the complete payroll run that will be generated at some point in time for the payroll period of September 27, 2015, at 7:00 AM through and including October 11, 2015, at 6:59 AM. The Debtor utilizes a time-clock time management system therefore, it is unable to submit a trial payroll run for the entire pay period (both pre and post petition wages). Employees expecting the paychecks associated with this pay period to be issued on October 16, 2015.

19. Under Section 507(a)(4) of the Bankruptcy Code, employees are afforded a priority claim for wages earned within 180 days of the filing of the bankruptcy case, up to a cap of $12,475.00 per employee.

20. Under the Proposed Payroll, no one employee will be paid more than the $12,475.00 per employee cap. The aggregate total of all wages to be paid to all employees for the pre-petition period is approximately $48,781.28 (gross wages) for the aforementioned pay period covering September 27, 2015, at 7:00 AM through and including October 2, 2015. The payroll for the balance of the pay period of September 26, 2015, through and including October 11, 2015, at 6:59 AM is not yet known.

21. The claims which the Debtor requests authority to pay by this Motion will reduce the claims which will be or could be asserted against this estate.

22. It is respectfully submitted that the relief requested is in the best interests of creditors and this estate.

23. By this Motion, the Debtor requests that the Court enter an Order authorizing the immediate payment of employee wages, benefits, employment taxes, and any other payroll obligations associated therewith as reflected on the attached Exhibit "1" or the supplemental proposed payroll run(s) to be filed.

WHEREFORE, Debtor respectfully requests that the Court enter an Order authorizing the immediate payment of the Proposed Payroll and the Proposed Short-Period Payroll.

## REQUEST FOR EXPEDITED HEARING

24. The Debtor requests that the Court consider the instant Motion on an expedited basis, with the hearing to be held as soon as suits the convenience of the Court.

25. An expedited hearing is necessary to avoid immediate and irreparable harm to the estate, as more fully explained above.

26. Accordingly, the Debtor respectfully submits that cause for an expedited preliminary hearing exists.

27. The need for an expedited preliminary hearing has not been caused by any lack of due diligence on the part of the Debtor or its counsel, but arises solely due to circumstances beyond their control.

WHEREFORE, Debtor respectfully requests that the Court consider Debtor's request for an order authorizing payment of pre-petition wages, benefits and employment taxes, and further, it does authorize its undersigned counsel to file the within Motion on its behalf.

Respectfully submitted,

SPENCE, CUSTER, SAYLOR,
WOLFE & ROSE, L.L.C.

By: */s/ Kevin J. Petak*
James R. Walsh, Esquire
Pa. ID. # 27901
Kevin J. Petak, Esquire
Pa. ID. # 92154
400 Ameriserv Financial Building
P.O. Box 280
Johnstown, PA  15907
JWalsh@spencecuster.com
KPetak@spencecuster.com
Proposed Counsel for Debtor-In-Possession

4