IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | : | |
| | : | |
| THE BUCKTAIL MEDICAL CENTER | : | Case No. 4:15-bk-04297-JJT |
| | : | |
| Debtor | : | Chapter 11 |
| THE BUCKTAIL MEDICAL CENTER , | : | |
| | : | |
| Movant | : | Doc. No. 69 |
| | : | |
| v. | : | Hearing Date & Time: |
| | : | |
| SANTANDER BANK, N.A. | : | February 19, 2016 10:00 am |
| f/k/a SOVEREIGN BANK, N.A. | : | |
| | : | |
| Respondent | : | |

**OBJECTION OF THE UNITED STATES OF AMERICA
TO DEBTOR'S MOTION FOR ORDER AUTHORIZING INTERIM AND
PERMANENT USAGE OF CASH COLLATERAL**

The United States of America, on behalf of the Department of Health and Human Services ("HHS"), acting through its designated component, the Centers for Medicare & Medicaid Services ("CMS"), hereby objects to *Debtor's Motion For Order Authorizing Interim And Permanent Usage Of Cash* (D.I. 69) (the "Motion"). The relief requested by the Motion and the Proposed Final Order violates the Bankruptcy Code, applicable federal law, and Third Circuit precedent to the extent it limits the United States' setoff,

recoupment, and related rights.[1] In support of its objection, CMS states as follows:

## PROCEDURAL BACKGROUND

1. On October 2, 2015 (the "Petition Date"), the above-captioned Debtor ("Debtor") filed its voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, Debtor continues to operate its businesses and manage its affairs as a debtor-in-possession.

3. Debtor is party to Medicare provider agreements with the Secretary of HHS (the "Secretary"), acting through CMS, to receive payment for services provided to Medicare beneficiaries pursuant to the provisions of, and regulations promulgated under, Title XVIII of the Social Security Act. 42 U.S.C. §§ 1395-1395kkk (the "Medicare Statute").

---

[1] The United States' objection can be resolved by making two modifications to the Proposed Order. First, a subparagraph (e) would have to be added to ¶ 6 as follows: "reimbursements due Medicare pursuant to its secured right of set-off, right to recoupment, and related rights." Second, a new paragraph 11would have to be added to the motion as follows: "Notwithstanding anything herein to the contrary, nothing in this Order shall impair, limit, or otherwise affect any rights that Medicare, the Centers for Medicare & Medicaid Services, or the Department of Health and Human Services may have against the Debtor, including any right to recoup from or set-off against any Medicare receivables." Also, succeeding paragraphs would have to be re-numbered accordingly.

4. On November 10, 2015, Debtor filed a motion (D.I. 69) and proposed interim order (D.I. 69-3) ("Proposed Order Granting Substantive Relief"). The Order contains the following provisions:

    a. ¶ E states: "the Pre-Petition Indebtedness . . . is not subject to any contest, objection, recoupment, defense, counterclaim, offset. . ."

    b. ¶ I includes all debtor's accounts in the "Personal Property Collateral" (apparently including Medicare account receivables) which is then included in the Pre-Petition Collateral. ¶ 4 then gives the Lender replacement liens upon all of the pre-petition collateral.

    c. ¶ L provides that "the Lender has a valid, duly perfected, first-priority lien upon . . . all of the cash generated in the debtor's business after the Petition Date."

8. Also on November 10, the Court issued an Order setting a Hearing on Motion for Interim Use of Cash Collateral for November 13, 2015. The Order provided that responses were due on or before the hearing, and the Debtor was ordered to serve and file proof of service prior to hearing. (D.I. 70).

9. Debtor did not serve the United States prior to the hearing. (D.I. 73).

10. On November 13, the Court continued the matter, scheduling it for hearing on January 8, 2016.

11. On December 31, 2015, the Court entered an Interim Order (D.I. 85), which contains the identical objectionable language specified in paragraph 4,

3

above. In addition, the Court set a response date to the Motion of January 7, 2016 at 5:00 p.m.

## REGULATORY BACKGROUND

12. Debtor operates a critical access hospital and a skilled nursing facility, both of which provide services under Part A of the Medicare program. To be eligible to receive payment for such services, a provider such as Debtor must have a valid agreement with the Secretary, called a Health Insurance Benefit Agreement (commonly known as a "Provider Agreement"). 42 U.S.C. § 1395cc; 42 C.F.R. § 400.202 (defining "provider"). A Provider Agreement is defined as an agreement between CMS, acting on behalf of the Secretary, and a health facility, such as a hospital, a skilled nursing facility, or a hospice. 42 C.F.R. §§ 489.2 and 489.3.[2] [3]

13. The transfer of a Provider Agreement is strictly limited. Provider Agreements may be assigned only if there is a "change of ownership." 42 C.F.R. § 489.18. When CMS determines that there has been a valid "change of ownership," the existing Provider Agreement is automatically assigned to the new owner. 42 C.F.R. § 489.18(c); *United States v. Vernon Home Health, Inc.*, 21 F.3d

---

[2] To obtain a Provider Agreement, a new provider must apply for an initial certification. *See* 42 C.F.R. §§ 488.1, 488.3, 489.1, 489.2 and 489.10. The certification process enables HHS to determine, *inter alia*, that the provider is qualified to provide health care services to patients. *See* 42 C.F.R. §§ 489.10-.12 (grounds for denying a Provider Agreement); *see also* 42 C.F.R. Part 485, Subpart F and Part 483, Subpart B (health and safety requirements to qualify as a critical access hospital and a long-term care facility).

[3] Debtor also operates a health clinic which provides services under Part B of the Medicare program. Healthcare entities which provide services under Part B must have Enrollment Agreements with Medicare. *See* 42 C.F.R. §§ 424.500-.570.

4

693, 696 (5th Cir. 1994). An assigned agreement is subject to all statutory and regulatory terms under which it originally was issued, including the adjustment of payments to account for previously made overpayments. *Vernon*, 21 F.3d at 696 (*citing* 42 C.F.R. § 489.18(a), (d)).

14. With respect to amounts paid to providers, the Medicare Statute states:

> [t]he Secretary shall periodically determine the amount which should be paid under this part to each provider of services with respect to the services furnished by it, and the provider of services shall be paid, at such time or times as the Secretary believes appropriate (but not less often than monthly) and prior to audit or settlement . . . the amounts so determined, with necessary adjustments on account of previously made overpayments or underpayments.

42 U.S.C. § 1395g(a).

15. The Secretary contracts with Medicare Administrative Contractors ("MACs") (formerly called fiscal intermediaries), typically private insurance companies, to administer payment to providers for Medicare covered services. MACs make interim payments to providers in accordance with the Medicare Statute and regulations and perform the day-to-day administration of Medicare, *e.g.*, audit and reimbursement activities. 42 U.S.C. § 1395kk-1; 42 C.F.R. §§ 421.400 – 421.404.

16. Within five months after the end of each fiscal year, the provider must submit financial information in the form of a cost report verifying the actual amount of reimbursements owed to it for the past fiscal year. *See* 42 U.S.C. §§ 1395g and 1395hh (giving the Secretary authority to require

5

Case 4:15-bk-04297-JJT    Doc 97    Filed 01/07/16    Entered 01/07/16 15:54:52    Desc
Main Document    Page 5 of 12

submission of cost reports). Once the cost report has been submitted, the MAC audits the cost report for that year and determines the provider's actual, rather than estimated, reimbursement amount for the year. 42 U.S.C. §§ 1395g; 1395x(v)(1)(A)(ii). [4]

17.  The MAC then issues a "Notice of Amount of Medicare Program Reimbursement" ("NPR"), which determines whether the provider was overpaid or underpaid for that fiscal year. 42 C.F.R. §§ 413.60, 405.1803. The NPR determination is final unless it is revised by the intermediary or appealed to the Provider Reimbursement Review Board. 42 C.F.R. § 405.1807.

18.  If a provider is dissatisfied with the MAC's determination of program reimbursement and it meets the applicable amount in controversy requirement, it may, within 180 days of the date the NPR is issued, request a hearing before the Provider Reimbursement Review Board. 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835. After that decision is reviewed by the Secretary, the provider may seek review in federal district court. 42 U.S.C. § 1395oo(f)(1). Such review is appellate in nature.

19.  The regulations also permit reopening in order to make corrections

---

[4] From time to time during a provider's fiscal year, a provider submits claims for payment to its MAC. The MAC makes estimated payments to critical access hospitals during the year. The critical access hospital's total reimbursement for a particular cost year is based on the MAC's review of the hospital's claimed "reasonable costs." 42 C.F.R. § 413.70. The MAC makes two types of payments to a skilled nursing provider. The first is a pre-determined prospective payment rate, which covers most services, 42 U.S.C. § 1395yy; 42 C.F.R. §§ 413.330-413.350. The fiscal intermediary also makes estimated interim payments for bad debts and Medicare Part A costs not covered by the prospective payment system. 42 U.S.C. § 1395(g)(a); 42 C.F.R. § 413.350(c).

6

on otherwise final cost report determinations. 42 C.F.R. § 405.1885. A MAC determination "may be reopened, for findings on matters at issue" either by own motion of the MAC, or at the request of the provider affected by the determination, provided that the reopening request is made within three years of the finalization of the specific cost report determination included in the NPR. *Id.*

## OBJECTION

20. Debtor's Motion is impermissible as filed. First, the provisions identified in paragraph 4 above arguably enjoin the United States from exercising its setoff, recoupment, and related rights under applicable law without seeking such relief via an adversary proceeding. Second, the United States' setoff, recoupment, and related rights are well-settled under applicable federal law and Third Circuit precedent. Nothing in the Bankruptcy Code permits the Debtor to modify these rights without providing the United States adequate protection. The Debtor has failed to provide any such protection.

**A. Debtor Cannot Enjoin the United States' Rights in this Motion for Use of Cash Collateral.**

21. Paragraphs E, I, L, and 4 of the Proposed Order purport to limit – and in effect, enjoin – the United States' rights to "offset" and "recoup."

22. Debtor, however, may not seek such injunctive relief in a motion for use of cash collateral. Instead, Debtor must file an adversary proceeding. *Matter of Zale Corp.*, 62 F.3d 746, 762 (5th Cir. 1995) ("Under Rule 7001, an injunction requires an adversary proceeding."); *In re Lyons*, 995 F.2d 923, 924 (9th Cir. 1993) (explaining that relief falling under one of the categories listed in

7

Rule 7001 may only be obtained through an adversary proceeding); *In re Continental Airlines, Inc.*, 236 B.R. 318, 326-27 (Bankr. D. Del. 1999) (noting that proposition that injunctive relief requires an adversary proceeding is "generally correct"). Debtor has not filed such an adversary proceeding, and, accordingly, paragraphs E, I, L, and 4 must be modified by adding a new paragraph 23 as discussed in note 1 above.[5]

### B. Debtor Cannot Impair the United States' Rights to Recover Pre-Petition Overpayments

23. Even if Debtor could seek injunctive relief in a cash collateral order, Debtor's attempt to limit the United States' collection rights has no basis in the Bankruptcy Code. Debtor's paragraphs E, I, L and 4 purport to prohibit the United States' rights, guaranteed by Medicare law, to set-off and recoupment of certain Medicare overpayments to Debtor. Well-settled Third Circuit case law recognizes that the United States' collection authority against bankrupt Medicare providers includes recoupment of pre petition overpayments from reimbursements due for the same cost year under the same provider agreement, setoff pursuant to section 553, *In re University Med. Ctr.*, 973 F.2d 1065, 1079 (3d Cir. 1992), and recouping all overpayments from ongoing Medicare payments after the assumption of Medicare Provider Agreements, *id.* at 1075.

---

[5] Debtor also alleges no waiver of sovereign immunity that would allow it injunctive relief. Although section 106(a)(1) abrogates sovereign immunity related to sections 363 and 364, the relief sought by paragraphs E, I, L, and 4 is not authorized by either of these sections, as discussed below.

24. The United States has a potential right to setoff pursuant to section 553 because it may have mutual pre-petition debts and claims. The United States has a contingent and unliquidated claim against the Debtor because it may be owed prepetition overpayments.[6] The United States also may pay the Debtor, post-petition, for services provided pre-petition. *See In re Metro. Hosp.*, 110 B.R. 731, 737 (Bankr. E.D. Pa. 1990) (holding that underpayment arose prepetition where "[a]ll the medicare services and the costs attendant … occurred prepetition," even though HHS's "final determination [as to the underpayment] was made postpetition"). In addition, the United States under section 553 has the right to setoff its claims against debts from different transactions and occurrences. *In re University Med. Ctr.*, 973 F.2d at 1079.

25. Moreover, if Debtor assumes and assigns its Medicare Provider Agreements, the United States will have the right to recoup all overpayments, including pre-petition overpayments, from any post-petition payments to Debtor. Under applicable bankruptcy and Medicare law, the assignee must assume all of the burdens, as well as the benefits, arising from the assignment of the Provider Agreements. 11 U.S.C. § 365(a); *In re University Med. Ctr.*, 973 F.2d at 1075; 42 C.F.R. § 489.18(d); *Vernon*, 21 F.3d at 696; *see also In re Charter Behavioral Health Sys., LLC*, 45 Fed. Appx. 150, 151, 2002 WL 2004651, *1 n.1 (3d Cir. June 3, 2002) (observing that "[i]f the new owner elects to take an assignment of the existing Medicare Provider Agreement,

---

[6] The cost report for the most recent fiscal year is not due from the Debtor until May 31 2016.

9

Case 4:15-bk-04297-JJT    Doc 97    Filed 01/07/16    Entered 01/07/16 15:54:52    Desc
Main Document    Page 9 of 12

it receives an uninterrupted stream of Medicare payments *but assumes successor liability for overpayments and civil monetary penalties asserted by the Government against the previous owner*") (emphasis added) (citing 42 C.F.R. § 489.18(d); *Deerbrook Pavilion, LLC v. Shalala*, 235 F.3d 1100, 1103-05 (8th Cir. 2000); *Vernon*, 21 F.3d at 696).

26. Debtor seeks to strip these collection rights from the United States using a motion for use of cash collateral. The cash collateral provisions in section 363 do not allow impairment of the United States' setoff and recoupment rights without adequate protection. Under Third Circuit law, "[s]etoff … elevates an unsecured claim to secured status, to the extent that the debtor has a mutual, pre-petition claim against the creditor." *Lee*, 739 F.2d at 875; 3-362 Collier on Bankruptcy ¶ 362.03[9] ("A creditor's setoff right is viewed as a secured claim under section 506(a)," and "[f]unds subject to setoff are cash collateral under section 363(a) and may be used … only as provided in section 363 (c)(2)."). Accordingly, the Debtor must provide the United States with adequate protection if it proposes to impair the United States' interest in any funds subject to setoff or recoupment. *See* 11 U.S.C. § 363(e); *In re Colonial Center, Inc.*, 156 B.R. 452, 463 (Bankr. E.D. Pa. 1993). Debtor's proposed Order provides no protection whatsoever to the United States.

Moreover, nothing in section 363 of the Bankruptcy Code – the provision dealing with cash collateral – permits the Debtor to limit the United States' setoff, recoupment, and related rights guaranteed by the Medicare statute.

Accordingly, paragraphs E, I, L and 4 are inappropriate, and must be modified as described in note 1 above.

## CONCLUSION

For the reasons stated above, the Court should deny the Motion unless the Proposed Order is modified as described in note 1, above.

Dated:  January 7, 2016                Respectfully submitted,

PETER J. SMITH
United States Attorney

/s D. Brian Simpson
D. BRIAN SIMPSON
Assistant U.S. Attorney
Attorney I.D. No. OH 0071431
U.S. Attorney's Office
228 Walnut Street, Suite 220
Harrisburg, PA 17108-1754
Phone: 717-221-4482
Fax: 717-221-2246
D.Brian.Simpson@usdoj.gov

11

Case 4:15-bk-04297-JJT    Doc 97    Filed 01/07/16    Entered 01/07/16 15:54:52    Desc
Main Document    Page 11 of 12

# CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania, and is a person of such age and discretion as to be competent to serve papers.

That on January 7, 2016, she served copies of the attached:

**OBJECTION OF THE UNITED STATES OF AMERICA
TO DEBTOR'S MOTION FOR ORDER AUTHORIZING INTERIM AND
PERMANENT USAGE OF CASH COLLATERAL**

by electronic mail to:

Kevin Petak, Esquire
U.S. Trustee

and by placing said copy in a postpaid envelope addressed to the persons hereinafter named, at the places and addresses stated below, which is the last known addresses, and by depositing said envelopes and contents in the United States Mail at Scranton, Pennsylvania.

Address:

**The Bucktail Medical Center**
1001 Pine Street
Renovo, PA 17764

/s Jodi Matuszewski
Jodi Matuszewski
Legal Assistant